**HENGL & COWAN, P.L.C.**
Ryan C. Hengl, Esq. (SBN 270725)
Barbara E. Cowan, Esq. (SBN 251942)
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone:   (626) 486-2620
Facsimile:    (877) 459-3540
Email:         ryan@henglcowan.com
                   brandi@henglcowan.com

Attorneys for Plaintiff CALVIN LIU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN LIU, an individual,<br><br>              Plaintiff,<br><br>       vs.<br><br>TUTOR PERINI CORPORATION, FRONTIER-KEMPER CONSTRUCTORS, INC., and DOES 1 through 10, inclusive,<br><br>              Defendants.<br>_____ | Case No.  2:21-cv-5803<br><br>**COMPLAINT FOR DAMAGES:**<br><br>    (1) VIOLATION OF SECTION 806 OF THE SARBANES-OXLEY ACT<br><br>**DEMAND FOR JURY TRIAL**<br>**PUNITIVE DAMAGES SOUGHT** |

Plaintiff alleges as follows:

This is a whistleblower retaliation case brought by Calvin Liu, a former employee of the Tutor Perini Corporation and Frontier-Kemper Constructors, Inc., the companies who are building the Purple Line Extension in Los Angeles, California.  The Purple Line extension will run under Wilshire Boulevard through the Hancock Park, Miracle Mile, Beverly Hills, Century City, and Westwood Communities.  Mr. Liu reported that these entities engaged in rampant violation of environmental protection statutes and regulations in order to reduce costs of the project, resulting in larger profits for the companies at the expense of the health and safety of the surrounding community.  Specifically, Mr. Liu reported that chromium, arsenic, and vanadium levels were above the legally permissible levels, and that the companies were illegally disposing of contaminated soil and other products without taking proper precautious, so that the companies' costs would be reduced and its profits increased.  Mr. Liu's employment was terminated after he reported these issues to his employers and to outside regulators.

## THE PARTIES

1. Plaintiff CALVIN LIU (hereinafter "Plaintiff" or "LIU") is a resident of the State of Arizona.

2. The Tutor-Perini Corporation is a publicly traded company with the ticker symbol TPC.  Calvin Liu was employed by the Tutor-Perini Corporation, and its acquired subsidiary, Frontier-Kemper Constructors, Inc. (hereinafter collectively referred to as "Defendant" or "TPC").

3. LIU was at all times relevant to this action an employee of TPC.

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This case involves a federal question, specifically whether Defendant violated the anti-retaliation provisions of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A.

5.       Venue is proper in this District because Plaintiff was employed by Defendant in this District, and because Defendant's headquarters are located in Sylmar, California, within this District.

## FACTUAL ALLEGATIONS

6.       LIU was employed by TPC from March 11, 2019 to August 28, 2020. LIU worked as an Office Engineer through August 28, 2020, and was also an Environmental Lead (from March 11, 2019 to April 30, 2020) on the Purple Line Extension – Section 3 Tunnels Project.

7.       LIU worked onsite at the tunnels project in Los Angeles.  LIU was initially tasked with preparing environmental document submittals, conducting environmental inspections, performing light computer aided drafting for the project, assisting the construction manager and project engineer, and other duties.

8.       TPC has communicated false and fraudulent test results via email (i.e., wire fraud) to numerous government and/or regulatory authorities.

9.       On March 17, 2020, LIU filed a whistleblower complaint with the Department of Labor alleging that he was being retaliated against for complaining about multiple violations of the Clean Water Act, Federal Water Pollution Control Act, California Resource Conservation and Recovery Act, Toxic Substance Control Act and the Clean Air Act.  In short, LIU complained that TPC was engaging in rampant violation of environmental protection statutes and regulations in order to reduce costs of the project, resulting in larger profits for TPC at the expense of the health and safety of the surrounding community.

10.       On March 18, 2020, in a conference call, Vice President Steve Redmond stated that he did not want the soil recently excavated as part of the tail track exit shaft excavation to be tested, as he knew that it would show to be contaminated, and the soil disposal would thus become more expensive.  The soil at issue was contaminated with hydrocarbons and volatile organic compounds (VOCs), and was required to be disposed of in a different manner to comply with environmental, hazardous waste, and other

regulations.  During this call, William Vollmer also instructed LIU *not* to contact any hazardous waste or contaminated soil disposal facilities.

11. On March 19, 2020, LIU received laboratory test results showing that soil excavated and tested on March 16, 2020, showed that chromium, arsenic, and vanadium levels exceeded permissible levels pursuant to the California Resource Conservation and Recovery Act.  Later that day, LIU was instructed *not* to mention this to any regulatory or administrative agency.

12. The next day, March 20, 2020, LIU observed approximately 10-12 hazardous soil loads being hauled away from the construction site by JJ and Flores Trucking.  This trucking firm was not one of the preapproved haulers permitted by the City of Los Angeles, and LIU was aware that the contaminated soil was illegally dumped by an unapproved hauler in an improper dump site and/or disposal facility.

13. On March 25, 2020, the Secretary of Labor issued a finding that the actions taken by Petitioner at that time – i.e., changing job duties and threatening termination – did not constitute adverse employment actions.  On April 22, 2020, LIU properly appealed the ruling and requested a hearing with the Department of Labor pursuant to the statutorily mandated process for whistleblower retaliation complaints.  Department of Labor issued a Notice of Hearing and Pre-Trial Order on May 19, 2020.

14. On March 26, 2020, LIU was verbally reprimanded by Superintendent William Volmer for ordering additional chromium lab testing.  Later that same day, LIU observed TPC having *contaminated* soil hauled to the Vulcan Durban facility, which only accepts *clean* soil.

15. TCP demanded that LIU sign a Chain of Custody form for soil samples from the shaft excavation on April 1, 2020.  LIU refused to do so, as the statements on the form were false.  Two days later, on April 3, 2020, LIU reported that TCP's subcontractors were using truck haulers that were not on the preapproved list, and that contaminated soil was being improperly disposed.

16. On April 8, 2020, TCP, through Saeed Tabrizi, demanded LIU provide him with "a list of equipment with pricing quotes to perform all water testing onsite." LIU objected, and stated that acquiring this equipment would permit the environmental testing to perform onsite, which is unlawful. Regulations require the use of independent scientific laboratories with proper sample extraction procedures and fully traced chain of custody to ensure the veracity of the results.

17. On April 9, 2020, LIU was instructed, via an email from Superintendent Vollmer, *not* to forward soil test results showing several metals exceeding allowable contamination levels to Metro.

18. The next day, April 10, 2020, LIU was reprimanded for not signing a fraudulent manifest regarding the disposal of soil. LIU did not sign it because the soil being disposed of was hazardous and was being sent to the Chiquita Canyon Landfill and Simi Valley Waste Management Recycling Facility, which only is supposed to take "clean" soil disposals. Each truckload of soil taken off-site on April 10, 2020, unlawfully and fraudulently certifies that the soil does not contain RCRA materials, even when the testing results clearly show otherwise.

19. On April 14, 2020, LIU observed 686 tons of hazardous waste soil hauled off by 12 various trucking companies, none of which were a preapproved hauler. In total, 52 truck-loads were hauled to a clean dirt reuse landfill in Azusa, California. This was unlawful, since the soil was contaminated, and thus not able to go to a clean dirt reuse facility. That same day, TCP demanded several times that LIU sign a quality control document related to the hazardous soil. LIU refused.

20. On April 16, 2020, TCP emailed LIU to approve invoices for the hauling of hazardous waste soil to the Vulcan Durbin clean soil facility during the time period of March 27, 2020 to April 3, 2020. LIU refused to do so, because the amount of the soil and soil characteristics (i.e., that it was contaminated) as stated on the documents were false.

21. On April 30, 2020, TCP removed any responsibility for environmental engineering tasks on Metro's Purple Line Section 3 project from LIU. However, on May 4, 2020, LIU was then again asked to sign the fraudulent SWPPP. LIU declined.

22. On May 5, 2020, LIU was called into a meeting in the conference room with Steve Redmond, Saeed Tabrizi and Somchai Anukornchaikul and was verbally accused of leaving off truck load counts on the Project Daily Reports, among other misrepresentations. He was also was illegally asked to respond to rejected comments from an old SWPPP weekly inspection report submittal – February 28, 2020 (even though TCP had removed any responsibility for environmental tasks from LIU on April 30, 2020).

23. On May 27, 2020, 156 truck-loads of the stockpile of the soil excavation was not tested, and instead hauled to a clean dirt reuse landfill. This is unlawful, as soil going to a clean dirt reuse landfill must be tested to ensure it is not contaminated. While the trucks were being loaded, Scott Wilson followed LIU and pushed him at the bottom of a set of stairs, shouting "fuck you" while he did so.

24. On June 3, 2020, Marvin Underwood threatened LIU with a pocketknife on the worksite. LIU reported this and other concerns in an email to TCP management on June 10, 2020. On June 17, 2020 and again on June 18, 2020, Steve Redmond verbally pressured LIU to "drop" his whistleblower claim.

25. On June 19, 2020, Steve Redmond and Saeed Tabrizi issued LIU a Final Written Warning on behalf of TCP. The warning again accused LIU of leaving off truck load counts on the Project Daily Reports, among other misrepresentations.

26. On August 4, 2020, Steve Redmond handed out pocket knives to all staff except LIU and the female community relations manager. The next day, August 5, 2020, LIU was "cussed out" by Scott Wilson for not assisting him with 8 separate rejected weekly noise measurement reports dating back to June 2020.

27. On August 7, 2020, Superintendent Vollmer told LIU to "stop snitching and drop the OSHA whistleblower complaint."

28. On August 13, 2020, Steve Redmond told William Vollmer "not to give Skinny's (one of William's labor foreman's) pocket knife to Marvin Underwood. Steve was next to LIU's cubicle when he said this; and Marvin heard this and responded to Steve "you would say this."

29. On August 18, 2020, LIU confirmed that approximately 50 cubic yards of contaminated soil was excavated from the proposed sewer pump station on August 11, 2020. Superintendent Vollmer had instructed field engineers not to mention this to anyone.

30. On August 20, 2020, LIU reported to Metro's CEO and other executives, the City of Los Angeles Mayor, Los Angeles County Supervisors, Los Angeles City council members, among others, about the contaminated soil that was excavated on August 11, 2020, and TCP's instruction that this not be disclosed. In the same email, LIU reported that TCP was not conducting laboratory testing regarding soil contamination, failed to report the contaminated soil quantities of approximately 20,000 cubic yards in the monthly reports emailed to Metro and the City, and that contaminated soil had been illegally hauled to two different clean dirt facilities. The failure of TCP to report the contaminated soil quantities in its monthly reports constitutes fraud. Because these reports are submitted electronically, this specifically constitutes wire fraud.

31. On August 26, 2020, LIU was served, at work, with a Petition filed by TCP in the United States District Court.

32. On August 27, 2020, TCP personnel was interviewed by law enforcement regarding the pocketknife incident LIU had reported previously to TCP and the Veteran Affairs (VA) and the City of Los Angeles police.

33. On August 28, 2020, LIU's employment was terminated. LIU was told that his position had been eliminated. This was false. LIU was fired in retaliation for engaging in protected activities. LIU's position was not eliminated. TCP advertised an opening for LIU's position shortly after, before the end of September 2020.

34. LIU has been retaliated against for engaging in protected activity under SOX. LIU was harassed, demoted, reprimanded, and ultimately terminated from his employment. LIU requests all remedies available under the SOX statute.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 806 OF THE SARBANES-OXLEY ACT

## AGAINST ALL DEFENDANTS

35. Plaintiff incorporates all preceding paragraphs by reference, as though fully stated herein.

36. Section 806 of the Sarbanes-Oxley Act prohibits employers from discharging, constructively discharging, retaliating or in any manner retaliating against any employee because he or she provided information, caused information to be provided, or assisted in an investigation by a federal regulatory or law enforcement agency, or an internal investigation by the company relating to alleged mail fraud, wire fraud, bank fraud, securities fraud, violation(s) of SEC rules and regulations or violation(s) of Federal law relating to fraud against shareholders. In addition, an employer may not discharge or in any manner retaliate against an employee because he or she filed, caused to be filed, participate in, or assisted in a proceeding relating to alleged mail fraud, wire fraud, bank fraud, securities fraud, violation(s) of SEC rules and regulations, or violation(s) of Federal law relating to fraud against shareholders.

37. If an employer takes retaliatory action against an employee because he or she engaged in any of these protected activities, the employee can file a complaint with OSHA, which Plaintiff has done.

38. Plaintiff has exhausted all administrative remedies required to proceed with a cause of action for violation of the Sarbanes-Oxley Act. Plaintiff filed a Complaint with the Department of Labor within 180 days from the date of his termination. This was assigned Case No. 9-3290-21-068. Plaintiff has received findings and/or preliminary orders in accordance with 29 C.F.R. § 1980.105 on November 9, 2020. Plaintiff timely filed an objection to the preliminary findings and/or orders as provided in 29 C.F.R. §

1980.106.  More than 180 days have passed since Plaintiff filed his objection.  Accordingly, Plaintiff has exhausted his administrative remedies, and waited the requisite amount of time such that he may now file a complaint directly in this Court.

39.     Defendant discharged Plaintiff's employment and further discriminated and retaliated against Plaintiff after Plaintiff made oral and/or written complaints regarding what he reasonably believed to be illegal or unlawful conduct in violation of state and federal statutes, rules and regulations.  Plaintiff made these complaints to his employer, by and through its agents and employees.

40.     Plaintiff is informed and believed, and thereon alleges that his engagement in protected activities were contributing factors to Defendant's decisions to subject Plaintiff to adverse employment actions including but not limited to discipline, and ultimately, wrongful discharge from his employment.

41.     Plaintiff further continues to suffer post-termination retaliation from Defendants, in the form of poor references and black-listing from the industry.

42.     As a direct and proximate result of the actions of Defendant, Plaintiff has suffered and will continue to suffer pain and mental anguish and emotional distress.

43.     Plaintiff has further suffered and will continue to suffer a loss of earnings and other employment benefits, whereby Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

44.     Defendant's actions constituted a willful violation of the above-mentioned federal laws and regulations.  As a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and expenses and attorney's fees in seeking to compel Defendant to fully perform its obligations under state and/or federal law, in amounts according to proof at time of trial.

45.     The conduct of Defendant described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

46. Defendant, through its officers, managing agents, employees and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above. By reason thereof, Plaintiff is entitled to an award of punitive damages in an amount according to proof at the time of trial.

47. Defendant committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

48. As a proximate result of the actions and conduct described in the paragraphs above, which constitute violations of Section 806 of the Sarbanes-Oxley Act of 2002, Plaintiff has been damaged in an amount according to proof at the time of trial and seeks civil penalties and attorney fees against Defendant pursuant to SOX.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LIU prays for relief as follows:

1. For general damages according to proof, however, no less than the jurisdictional limit of this court;
2. For restitution in an amount according to proof;
3. For special damages in amounts according to proof;
4. For exemplary and punitive damages in amounts according to proof;
5. For specific performance of the obligation to provide employment;
6. For reinstatement of Plaintiff's employment;
7. For injunctive relief as provided by law;
8. For declaratory relief as provided by law;
9. For interest as provided by law;
10. For cost of suit incurred herein;
11. For attorneys' fees and costs as provided by law; and

12. For such other and further relief as the Court deems fair and just.

Dated: July 19, 2021					**HENGL & COWAN, P.L.C.**

							/s/ Barbara E. Cowan
							By:	Ryan C. Hengl, Esq.
								Barbara E. Cowan, Esq.
								Attorneys for Plaintiff
								CALVIN LIU

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 19, 2021					**HENGL & COWAN, P.L.C.**

							/s/ Barbara E. Cowan
							By:	Ryan C. Hengl, Esq.
								Barbara E. Cowan, Esq.
								Attorneys for Plaintiff
								CALVIN LIU